UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v.-<br><br>ABDULAI KENNEDY SAAKA,<br><br>Defendant. | 19 Cr. 462-3 (KPF)<br><br>**ORDER** |

KATHERINE POLK FAILLA, District Judge:

Defendant Abdulai Kennedy Saaka, who is currently housed at the Residential Reentry Management facility in Atlanta, Georgia ("RRM"), has applied for compassionate release, in the form of immediate release from Bureau of Prisons ("BOP") custody, pursuant to 18 U.S.C. § 3582(c)(1)(A). In support, Mr. Saaka cites certain medical issues that arose while he was incarcerated, for which issues he claims he is not receiving adequate care, as well as the COVID-19 pandemic and rehabilitative steps he has taken. The Government opposes this motion. As set forth in the remainder of this Order, the Court denies Mr. Saaka's motion for compassionate release.

## BACKGROUND[1]

On June 25, 2019, Mr. Saaka was charged with three co-defendants in a sealed superseding indictment; Mr. Saaka was specifically charged with the offenses of conspiracy to commit money laundering and money laundering,

---

[1] Certain information specific to Mr. Saaka's post-offense conduct was detailed by the parties in their sealed sentencing submissions, filed on October 13, 2020 (defense), and October 20, 2020 (Government). The information contained in these submissions has been considered by the Court in resolving this motion, but because of its sensitivity it will not be discussed further in this Order.

both in violation of 18 U.S.C. § 1956. (Dkt. #4 (the "S2 Indictment")). The charges against Mr. Saaka and his co-defendants arose from a covert investigation conducted by the Federal Bureau of Investigation ("FBI") into an international network of individuals engaged in the laundering of fraudulently obtained funds; in the course of that investigation, Mr. Saaka agreed to provide pass-through accounts to launder a portion of what he understood to be $2 million in stolen funds. (Final Presentence Investigation Report ("PSR") ¶¶ 10-14).[2]

Mr. Saaka was arrested three days later and presented in the United States District Court for the Northern District of Georgia, before being ordered to appear in this Court on July 15, 2019. (Dkt. #6). While Mr. Saaka was initially released on conditions that included GPS monitoring, he was remanded on October 11, 2019, after violating certain conditions of his release. (*See* PSR, "Release Status"). On January 8, 2020, Mr. Saaka pleaded guilty to Count 8 of the S2 Indictment, which charged him with conspiracy to commit money laundering. (Minute Entry for January 8, 2020). The plea was entered pursuant to a written plea agreement with the Government in which the parties

---

[2] *See also* PSR ¶ 15:
> The FBI's investigation ultimately uncovered a much larger course of conduct for SAAKA over a sustained period of time. SAAKA facilitated various money laundering operations for various individuals. SAAKA admitted that the packets described above each related to a fraudulently created bank account that was established with the fabricated or "synthetic" identities of non-existent people, and that these accounts were created for the purpose of facilitating various money laundering operations.

2

stipulated that the applicable range under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") was 57 to 71 months' imprisonment.

Sentencing in the matter was initially scheduled to take place on April 21, 2020, but was adjourned several times because of the COVID-19 pandemic. (*See* PSR, "Sentence Date"). During that period, Mr. Saaka reported numerous medical issues, including a broken toe and blood clots in his leg. With the consent of the Government, Mr. Saaka was released to home confinement in May 2020, during which time he addressed several of his medical issues. At his sentencing on October 27, 2020, Mr. Saaka cited his medical issues, and other matters specific to his case, in seeking a sentence of time served. After extensive colloquy with the parties, the Court varied downwardly to a term of 32 months' imprisonment, balancing the factors that Mr. Saaka cited against the seriousness of his offense conduct. (*See* Transcript of Sentencing Proceeding ("Sent. Tr.") at 66-71; Minute Entry of October 27, 2020; Dkt. #58 (judgment)). In light of Mr. Saaka's medical issues — more specifically, his steps to address certain of them before his surrender date — the Court ordered an extended surrender date of April 30, 2021, and indicated its willingness to extend the date further if circumstances required. (Sent. Tr. 70-71, 73-74).

By sealed letter dated November 4, 2020, defense counsel requested that the Court advance the sentencing date from April 30, 2021, to November 6, 2020, so that Mr. Saaka could begin serving his sentence. The Court filed a sealed endorsement granting that request the same day. The Court

understands that Mr. Saaka was initially designated to the Federal Prison Camp in Montgomery, Alabama, but was subsequently transferred to the RRM. Mr. Saaka filed a *pro se* motion for compassionate release on September 9, 2021. (Dkt. #106). The Government opposed Mr. Saaka's request by letter brief dated November 17, 2021. (*See* Sealed Government Letter Brief dated November 17, 2021 ("Gov't Opp.")).

## APPLICABLE LAW

Under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), a court may reduce a defendant's sentence upon motion of the Director of the BOP, or upon motion of the defendant. A defendant may move under § 3582(c)(1)(A) only after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

When considering an application under § 3582(c)(1)(A), a court may reduce a defendant's sentence only if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i); *see generally United States* v. *Kimbell*, No. 21-288, 2021 WL 5441249, at *1 (2d Cir. Nov. 22, 2021). "The defendant has the burden to show he is entitled to a sentence reduction." *United States* v. *Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4

(S.D.N.Y. Jan. 8, 2020) (citing *United States* v. *Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)).

The Second Circuit has very recently summarized the standards pursuant to which district courts must evaluate compassionate release applications:

> Section 3582(c)(1)(A) authorizes a court to reduce a previously imposed term of imprisonment upon finding that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). A court deciding a compassionate release motion can consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it]." *United States* v. *Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). But there are three requirements that must be satisfied before a court can grant such relief. First, absent waiver or forfeiture by the government, an inmate must exhaust administrative remedies by requesting such relief from prison authorities. Specifically, an inmate may ask the sentencing court to consider reducing a sentence only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *see also United States* v. *Saladino*, 7 F.4th 120, 124 (2d Cir. 2021) (holding that the government may waive or forfeit the exhaustion requirement). Second, a court must "consider[ ] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A); see [*United States* v. *Jones*, 17 F.4th 371, 374-75 (2d Cir. 2021)]. Section 3553(a), in turn, lists numerous factors a court must review when imposing a sentence. These include, as most relevant here, "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed ... to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "the need for the sentence imposed ... to provide the defendant with ...

5

> correctional treatment in the most effective manner"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). Third, the inmate must demonstrate that his proffered circumstances are indeed "extraordinary and compelling" such that, in light of these § 3553(a) factors, a sentence reduction is justified under § 3582(c)(1)(A) and would not simply constitute second-guessing of the sentence previously imposed.

*United States* v. *Keitt*, No. 21-13-cr, 2021 WL 6058144, at *2 (2d Cir. Dec. 22, 2021).

## DISCUSSION

The parties are in agreement that the exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A) has been satisfied. (*Compare* Dkt. #106 at Ex. A (denial notice), *with* Gov't Opp. 5 n.2 ("The Government concedes that Saaka has exhausted his administrative remedies by filing a motion with BOP more than 30 days ago.")). It thus proceeds to consider whether Mr. Saaka has identified "extraordinary and compelling reasons" warranting his release, and concludes that he has not.

Mr. Saaka focuses on his medical issues, going so far to say that he has received "gross negligent medical care" and faced "deliberate indifference" from BOP medical personnel. (Dkt. #106 at 1). However, the bulk of the medical issues that he catalogues were both known to and considered by the Court in imposing its original sentence. Indeed, the Court granted Mr. Saaka's request for an extended surrender date so that he could address the medical issues himself (*see id.* at 5-7), and then granted Mr. Saaka's request to advance that date when he changed his mind. And with specific respect to the post-

6

surrender medical care that Mr. Saaka has received, the Court has reviewed the medical records provided by the Government, which make clear that Mr. Saaka has received appropriate care while incarcerated, both at FPC Montgomery and at RRM. (*See* Gov't Opp., Ex. A). There is nothing to suggest that Mr. Saaka has been unable to care for himself or has been neglected by BOP medical personnel, and his recent transfer to RRM will only enhance his ability to receive medical attention. Accordingly, the medical issues that Mr. Saaka outlines in his submission do not constitute "extraordinary and compelling reasons" warranting his immediate release.

As a secondary line of attack, Mr. Saaka cites the COVID-19 pandemic, and argues that "the mere existence of COVID-19 and a person's vulnerability to severe illness or death should he contract COVID-19" warrants compassionate release (Dkt. #106 at 10). However, Mr. Saaka's medical records disclose that he has received repeated testing for the COVID-19 virus, education concerning the virus (with a particular focus on modes of preventing its transmission), and vaccination against the virus. (*See, e.g.*, Gov't Opp., Ex. A at Tabs "COVID-19 RNA," "COVID-19 AG," and "Immunizations"). The fact of the COVID-19 pandemic, whether considered alone or in combination with Mr. Saaka's other issues, does not suffice to constitute "extraordinary and compelling reasons" for his release.

Finally, Mr. Saaka cites the rehabilitative steps he has taken while incarcerated. (Dkt. #106 at 34, 11). While the Court commends Mr. Saaka for these efforts, rehabilitation alone is insufficient to merit compassionate release,

7

and the Court specifically finds it insufficient in light of the nature and circumstances of Mr. Saaka's crime. "The only statutory limit on what a court may consider to be extraordinary and compelling is that rehabilitation alone shall not be considered an extraordinary and compelling reason." *Brooker*, 976 F.3d at 238 (citation and quotation omitted); *see also United States* v. *Nwankwo*, No. 12 Cr. 31 (VM), 2020 WL 7335287, at *3 (S.D.N.Y. Dec. 14, 2020) (concluding that "[Defendant's] rehabilitative efforts [were] certainly commendable, but they do not, either alone or in combination with the other circumstances he cites, meet the extraordinary and compelling standard" (internal marks omitted)).

Separately, the factors set forth in 18 U.S.C. § 3553(a) counsel against granting Mr. Saaka's motion. Those factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need "to protect the public from further crimes of the defendant." *See* 18 U.S.C. § 3553(a)(1), (a)(2)(C). The fraudulent conduct in which Mr. Saaka engaged was both indisputably serious and broader that what was alleged in the S2 Indictment. (*See* PSR ¶ 15 ("The FBI's investigation ultimately uncovered a much larger course of conduct for SAAKA over a sustained period of time. SAAKA facilitated various money laundering operations for various individuals.")). And as made clear in its sentencing rationale, the Court remains concerned that Mr. Saaka, who engaged in troubling conduct both before and after his arrest in this case, is a significant risk of recidivism. (*See* Sent. Tr. 71). Accordingly, even if the Court had found

8

extraordinary and compelling circumstances on the facts presented, which it has not, it would deny Mr. Saaka's application based on its consideration of the § 3553(a) factors.[3]

## CONCLUSION

For the foregoing reasons, Defendant Abdulai Kennedy Saaka's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is DENIED. The Clerk of Court is directed to terminate the motion at docket entry 106.

The Clerk of Court is further directed to mail a copy of this Order to Mr. Saaka at RRM Atlanta, Residential Reentry Office, 719 McDonough Blvd. S.E., Atlanta, GA 30315, and to update Mr. Saaka's address of record to reflect that same address.

SO ORDERED.

Dated:  December 30, 2021
        New York, New York

*Katherine Polk Failla*
KATHERINE POLK FAILLA
United States District Judge

---

[3] To the extent that he has not otherwise done so, Mr. Saaka can pursue relief in the form of a furlough under 18 U.S.C. § 3622 or home confinement as contemplated in the CARES Act, Pub. L. No. 116-136 (2020), and the Attorney General's April 3, 2020 memorandum to the BOP. The decision to grant any such relief, however, is reserved to the discretion of the BOP.